460 S.E.2d 489

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**EDDIE "TOSH" K., a Child under the Age of Eighteen Years, and Eddie K., Parent or Custodian of Said Child, Defendants Below, Appellants.**

No. 22510.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Decided July 14, 1995.

Robert F. Cohen, Jr., Natalie J. Harrison, Cohen, Abate & Cohen, Fairmont, for appellants.

Darrell V. McGraw, Jr., Atty. Gen., Stephen R. VanCamp, Deputy Atty. Gen., Charleston, for appellee.

PER CURIAM:

The appellant, Eddie "Tosh" K.,[1] was adjudicated a delinquent child as a result of having committed an assault. He appeals a March 15, 1994 order of the Circuit Court of Marion County which denied his motion to disqualify the Honorable Judge Rodney B. Merrifield, the trial judge; denied his motion for public proceedings; denied his motion for judgment of acquittal, in arrest of judgment and for a new trial; and sentenced him to six months probation pursuant to *W.Va.Code,* 49–5–13(b)(3) [1988] which outlines the disposition of a child in a juvenile proceeding.[2]

I.

On September 21, 1993, the appellant, who was then sixteen years old, and four other students were involved in a fight at North Marion High School, in Marion County, West Virginia. All five students were suspended from school for three days for their involvement in the fight. Additionally, all five students were charged with battery after the school principal reported the fight to the sheriff's department because of problems with racial tension at the high school.

Two of the students, Zane Hall and William "Butch" Long, pleaded guilty to battery charges in adult court since they were at least eighteen years old when the fight occurred. They were placed on probation for one year.

The appellant's case went to trial on a charge of delinquency based upon the battery charge. After hearing the evidence the jury found the appellant delinquent as a result of committing an assault. Thereafter, the trial judge accepted the juvenile probation officer's recommendation and placed the appellant on six months probation.

1. Since this case involves sensitive matters, we follow our traditional practice and use only the last initial of the juveniles involved in this case. *See State v. Michael S.,* 188 W.Va. 229, 230 n. 1, 423 S.E.2d 632, 633 n. 1 (1992) (citation omitted).

2. The State asserts that the appellant has fully served his term of probation.

II.

At the outset, we point out that it is difficult for us to understand how one high school fist fight, which did not result in serious injuries, could thrust a juvenile, who was a good student and athlete, so deeply into the juvenile justice system. Indeed, our review of the record reveals that there were several situations in this case which were not appropriately handled. Our primary concern is that it appears that the trial judge inappropriately took an "overly active" and "heavy handed" approach to this case. Thus, he possibly compromised his judicial role. Further, the appellant's trial attorney failed to make the required objections which would protect the record for meaningful review of some of the issues raised on appeal.

We are concerned about the following occurrences: (1) the trial judge put the appellant, whose record reveals that the only incident he has been involved in is the physical altercation which is the subject of this appeal, in the custody of the Industrial Home for Youth for thirty days of diagnostic testing, thus requiring the appellant to seek a writ of prohibition from this Court for his release; (2) appellant's trial attorney's failure to object to the appellant being taken into the custody of the Industrial Home for Youth;[3] and (3) the trial judge's refusal to release to the parties an affidavit made by the appellant's high school principal which allegedly relates to the appellant's case. These issues are obviously of great concern to this Court. However, as we discuss below, we do not find reversible error on the above points in this case.

The appellant raises numerous errors, many of which have no merit. However, some alleged errors require a discussion. Those errors will be addressed as trial and post-trial errors.[4] The trial errors are (1)

3. In fact, the record reveals that the appellant's trial attorney did not make any objections.

4. The appellant does raise a pre-trial error. The appellant argues that the juvenile petition filed against him does not satisfy *W.Va.Code,* 49–5–7(a) [1982] in that it does not specify the relief sought. *W.Va.Code,* 49–5–1(d) [1982] states, in pertinent part, that "[u]nless otherwise specifically provided in this chapter, all procedural

whether the evidence was sufficient to support a finding of delinquency based upon the crime of assault and (2) whether the trial judge could instruct the jury on the crime of assault when the petition seeking the adjudication of delinquency asserted the alleged conduct was battery. The post-trial errors raised by the appellant are (1) whether the trial judge improperly denied appellant's motion for public proceedings; (2) whether the trial judge improperly refused to provide appellant's counsel with a copy of an affidavit; and (3) whether in the disposition of this matter the trial judge applied the appropriate statutory dispositional alternative set forth in *W.Va.Code*, 49-5-13 [1988] when placing the appellant on probation.

## III.

## TRIAL ERRORS

### A.

■ The first issue is whether the appellant was properly found delinquent on a charge of assault. Initially, we must determine what the appropriate standard of review is for an adjudication of delinquency. As we stated in *State v. William T.*, 175 W.Va. 736, 738, 338 S.E.2d 215, 218 (1985), "an adjudication of delinquency is subject to the same standards of review on appeal as is a criminal conviction." (citation omitted). Therefore, the following standard of review regarding the sufficiency of evidence in a criminal case is applicable to the case before us:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the

prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Syl. pt. 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978). *See also* syl. pt. 10, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992). Additionally, we are mindful that a delinquent child is a child "[w]ho commits an act which would be a crime under state law . . . if committed by an adult, punishable by confinement in a jail or imprisonment[.]" *W.Va.Code*, 49-1-4(1) [1978].

■ Although there was conflicting evidence at trial as to what happened on the day of the fight, our review of the record indicates that when viewed most favorably to the State, the evidence supports a finding of delinquency based upon the crime of assault. The appellant testified that he was at his locker when he heard a commotion in the hall at school. Upon investigation, the appellant saw two black students, Jay F. and Mike M., standing in the hall with Butch Long. According to the appellant, Long and Jay F. looked as if they were going to fight one another. The appellant asserts that he had his hands in his pockets and was prepared to watch the fight when suddenly Long struck him above the left eye. When it appeared that Long was going to strike him again, the appellant states that a struggle ensued resulting in the appellant striking Long. Jay F. and Mike M., who were witnesses for the appellant, corroborated the appellant's story.

Conversely, Long testified that he was walking down the hallway when Jay F., Mike M., and the appellant ordered him to the bathroom in order to fight. Long asserts that when he refused, the appellant grabbed and ripped his shirt. Long responded by

---

rights afforded adults in criminal proceedings shall be applicable." Similarly, this Court has recognized that the "[r]ules of evidence and procedural rights applicable in adult criminal proceedings are applicable with equal force in juvenile adjudicatory proceedings." *State v. William T.*, 175 W.Va. 736, 738, 338 S.E.2d 215, 218 (1985) (citing to *W.Va.Code*, 49-5-1(d) [1982]).

Applying the aforementioned principles to this case, *W.Va.R.Crim.P.* 12(b)(2) states that the de-

fenses and objections based upon defects in an indictment or information must be raised prior to trial. *See* syl. pt. 4, *State v. Bongalis*, 180 W.Va. 584, 378 S.E.2d 449 (1989). The same reasoning should be applicable to a petition filed in a juvenile proceeding. Therefore, any objection to a defect in a petition must be raised prior to the trial. In the case before us, no such objection was made. Accordingly, there is no reversible error on this issue.

punching the appellant. This in turn led to a fight between Long and the appellant.

Therefore, when viewed most favorably to the State, the evidence shows that the appellant grabbed Long's shirt and engaged in a physical altercation with him. Thus, pursuant to *W.Va.Code,* 61–2–9(b) [1978], which sets forth the elements of an assault, the appellant's actions may be viewed as an "unlawful[ ] attempt[ ] to commit a violent injury to the person of another[.]"[5] Accordingly, when viewing the record in a light most favorable to the prosecution, we do not find that the evidence supporting a jury conviction of assault is manifestly inadequate.[6]

### B.

Second, the appellant argues that because the crime of assault is not a lesser included offense of the crime of battery, it was plain error for the trial judge to instruct the jury on the crime of assault where the appellant was only charged with battery.

The trial judge indicated that he was not going to tender either the State's or the appellant's proposed jury instructions. The trial transcript reveals that the trial judge and the lawyers for the State and the appellant reviewed, page by page, the trial judge's proposed instructions to the jury, including the assault instruction presently at issue. The transcript further reveals that the trial judge afforded both parties the opportunity to object to each of the proposed instructions, including the instruction on assault. Despite the opportunity to object to the trial judge's proposed instructions, the appellant's counsel chose not to object to any of them, including the assault instruction.

West Virginia Constitution art. III, § 14 provides that a defendant has a right to be fully informed of the nature of the offense against him or her. However, the record in the case before us is barren of any error in that regard with the possible exception of the instructions which discuss both battery and assault. As we previously stated, whether or not assault is a lesser included offense of battery, the appellant's trial attorney chose not to object to the instructions.

Recently, this Court held that "[w]hen there has been a knowing and intentional relinquishment or abandonment of a known right ...," there is no error to analyze pursuant to the plain error analysis. Syl. pt. 8, in part, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). *See also United States v. Lakich,* 23 F.3d 1203, 1207–8 (7th Cir.1994) (Since the defendant's attorney specifically stated that he agreed with the trial court's supplemental instructions the Seventh Circuit held that the defendant waived any objection to the supplemental instructions and rejected defendant's request for analysis under the plain error doctrine). Accordingly, the appellant's request for analysis under the plain error doctrine is rejected.

### IV.

### POST–TRIAL ERRORS

### A.

First, the appellant contends the trial judge improperly denied his motion for public proceedings, which motion was filed prior to the sentencing hearing, but after the delin-

---

5. *W.Va.Code,* 61–2–9(b) [1978] more fully states, in relevant part: "If any person unlawfully attempts to commit a violent injury to the person of another or unlawfully commits an act which places another in reasonable apprehension of immediately receiving a violent injury, he shall be guilty of a misdemeanor[.]"

6. We acknowledge that Justice Cleckley has criticized the use of *Starkey, supra,* as "the appellate standard for reviewing an insufficiency of the evidence assignment of error." *State v. Phalen,* 192 W.Va. 267, 272, 452 S.E.2d 70, 74 (1994) (Cleckley, J., concurring). Justice Cleckley states that the manifest injustice standard is too high of an evidentiary standard and should be replaced

by the following: "[O]n appeal of a criminal conviction, this Court must consider the evidence in the light most favorable to the prosecution and ask whether any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 273, 452 S.E.2d at 75.

If we were to apply the standard of review suggested by Justice Cleckley, we would reach the same result in the case before us. When viewing the evidence in a light most favorable to the prosecution, a rational finder of fact could have found, beyond a reasonable doubt, that the appellant committed an assault.

quency hearing. The appellant relies upon *W.Va.Code*, 49–5–1(d) [1982], which provides, in pertinent part, that "the general public shall be excluded *except persons whose presence is requested by a child or respondent* and other persons the court finds to have a legitimate interest." (emphasis added).

■ The State maintains that the exception in the above code section was not meant to allow the public in the courtroom during the proceeding. Clearly, the purpose behind excluding the public from the hearing of a juvenile proceeding is to protect the juvenile and not to infringe upon the rights of the juvenile.

The appellant argues, however, that he is entitled to waive his right to have the public excluded. Furthermore, he asserts that if he does waive such right, it will violate his right to have his criminal proceeding open and public as found in the Sixth Amendment of the United States Constitution and in article III, § 14 of the *W.Va. Const.* if the trial court declines to allow the public to be present. Additionally, the appellant maintains that if this Court construes *W.Va.Code*, 49–5–1(d) [1982] to mean that the juvenile could never request a public proceeding, then § 49–5–1(d) [1982] would violate the First Amendment to the *U.S. Const.*

■ We fail to see how the absence of the public at the sentencing hearing infringed upon the rights of the appellant. Indeed, the appellant, himself, failed to provide this Court any authority suggesting that the failure to allow the public to be present during the sentencing hearing infringes upon a juvenile's rights when the juvenile did not request the presence of the public at the delinquency proceeding. Essentially, the appellant seeks to pick and choose at what stages he wanted the public to be present.

We acknowledge, however, that had this issue been raised prior to the appellant's delinquency hearing, the ramifications could be very significant. Currently, throughout the country, courts are addressing similar issues. *E.g., RLR v. State*, 487 P.2d 27, 38 (Alaska 1971) (Children in juvenile delinquency proceedings are guaranteed the right to a public trial); *In re McM.*, 105 Cal. App.3d 187, 164 Cal.Rptr. 199 (1980) (A juvenile has no constitutional right to a public trial in a juvenile court proceeding); *Florida Pub. Co. v. Morgan*, 253 Ga. 467, 322 S.E.2d 233, 238 (1984) (A state may create a rule that juvenile court proceedings are presumed to be closed to the public, but for constitutional reasons this presumption cannot be conclusive); *In re Burrus*, 275 N.C. 517, 169 S.E.2d 879, 886–87 (1969), *cert. granted by* 397 U.S. 1036, 90 S.Ct. 1379, 25 L.Ed.2d 647 (1970) and *judgment affirmed on other grounds, McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (A public hearing is not required in a juvenile court proceeding. In *McKeiver* the Supreme Court of the United States held that a trial by jury in the adjudicative stage of a juvenile proceeding was not constitutionally required) *In re N.H.*, 63 Ohio Misc.2d 285, 626 N.E.2d 697 (Ohio Com.Pl.1992) (The public does have an interest in access to delinquency proceedings which is similar to its interest in criminal matters; however, the public's interest must be weighed against the confidentiality concerns of the juvenile court proceeding.) We decline to further address this issue because the appellant has failed to sufficiently argue how the exclusion of the public from his sentencing proceeding infringed upon his rights considering the appellant failed to seek public access during the delinquency proceeding.

### B.

Second, the appellant asserts that the trial judge improperly refused to provide appellant's counsel with a copy of an affidavit of Paul Donato, the principal of appellant's high school. Though the trial judge has stated that the affidavit was not part of this case, a letter written by Mr. Donato to the appellant's counsel indicates otherwise.

According to the appellant, Mr. Donato stated that he did not believe that appellant should have been charged as a juvenile delinquent; however, appellant states that Mr. Donato declined to provide an additional statement since the affidavit filed with the circuit court was his statement. Specifically, in a letter dated December 9, 1993, Mr. Donato wrote to appellant's counsel that the

affidavit "will stand as my statement on this matter."

Common sense dictates that a trial judge should not conceal an affidavit which was written for purposes of being made part of a record. Furthermore, a trial judge may not intentionally conceal information which has a bearing on the case. Such behavior by a trial judge will not be condoned.

Unfortunately, the record does not reveal the contents of the affidavit. Without a more developed record on this issue, this Court is unable to determine the relevance, if any, of the affidavit to the case before us. The appellant should have requested that the trial judge send the affidavit to this Court under seal, if necessary, for an examination of its contents. *Cf. W.Va.R.Crim.P.* 16(d)(1) (A party may make a motion to restrict or deny discovery of a statement, and if a Court grants the motion the text of the statement shall be sealed and preserved in the record so that it is available to the appellate court on review) and *State v. Tamez,* 169 W.Va. 382, 394, 290 S.E.2d 14, 20–21 (1982) (When the State refuses to disclose the identity of an informant, the trial court upon motion, is to conduct an *in camera* inspection of the written statements prepared by the State explaining why the identity of the informant should not be disclosed, and the *in camera* inspection shall be sealed and made a part of the record so that it will be available on appellate review). Accordingly, since the appellant failed to request that the affidavit be sent to this Court for review, we are unable to resolve this issue.

### C.

Third, the appellant asserts that the trial judge erred in sentencing the appellant to a period of probation rather than dismissing the petition pursuant to *W.Va.Code,* 49–5–13(b) [1988] which provides seven dispositional alternatives ranging from dismissing the petition to committing a child to a mental health facility. The appellant correctly points out that this Court held in syllabus point 1 of *State ex rel. R.S. v. Trent,* 169 W.Va. 493, 289 S.E.2d 166 (1982), that "W.Va.Code § 49–5–13(b) (1980 Replacement Vol.) requires the juvenile court at the dispositional stage of delinquency proceedings to 'give to the least restrictive' of the enumerated dispositional alternatives 'consistent with the best interests and welfare of the public and the child.' " The third of the seven alternatives is probation which requires a finding that the child is in need of extra-parental supervision.[7] The appellant maintains that the evidence does not indicate that he was in need of extra-parental supervision.

In support of his contention, the appellant states that he had a 3.0 grade point average and was taking college preparatory courses and three honors courses when the incident occurred. The appellant also states that he played football and basketball in school. Additionally, teachers stated that prior to this incident the appellant had never been in a fight at school and was never in any trouble.

However, in syllabus point 4 of *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982) this Court held: "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." *See also State v. Farr,* 193 W.Va. 355, 456 S.E.2d 199 (1995). Nothing in the record indicates that the trial judge was not within the statutory limits nor is there anything within the record which indicates that the trial judge based his decision on some impermissible factor. Accordingly, we hold there is no error on this issue.

### D.

The appellant raises four other issues on this appeal. First, the appellant argues that the trial judge improperly incarcerated the appellant in the Industrial Home for Youth for a diagnostic evaluation. As the State points out, this issue has been resolved.

---

7. The seven dispositional alternatives set forth in *W.Va:Code,* 49–5–13 [1988] are: (1) dismiss the petition; (2) refer child or child's parents to a community agency for assistance; (3) probation; (4) place child temporarily in foster care or commit child to the state child welfare agency; (5) commit child to an industrial home or correction institution for children; (6) commit child to a rehabilitative facility for rehabilitation; and (7) commit child to a mental health facility.

After the trial, the trial judge granted the State's motion to require the appellant to undergo diagnostic and psychological evaluation and ordered that the appellant be taken into custody and sent to the Industrial Home for Youth for thirty days of diagnostic testing. The appellant did not object. However, the appellant, who had retained counsel at this stage of the juvenile proceeding,[8] later filed a petition for a writ of prohibition with this Court seeking his release from the custody of the Industrial Home for Youth. This Court issued a rule to show cause to the trial judge.

In response, the trial judge explained that he was unaware of the appellant's objection to being sent to the Industrial Home for Youth until the rule to show cause was issued. The trial judge asserted that when he knew of the appellant's objection, he released the appellant from the custody of the Industrial Home for Youth. This Court, therefore, dismissed the writ of prohibition by an order dated February 17, 1994, because it was moot.

Therefore, the issue is not properly cognizable by this Court on appeal. As this Court has stated in the syllabus of *Standard Hydraulics, Inc. v. Kerns*, 182 W.Va. 225, 387 S.E.2d 130 (1989): " 'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syllabus Point 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908)." *See also* syllabus, *State v. Pettrey*, 177 W.Va. 723, 356 S.E.2d 477 (1987).

Second, the appellant contends that the trial judge improperly ordered the appellant's parents to pay, prior to the final adjudication, Dr. Fremouw's charges for the diagnostic and psychological evaluation of the appellant, which totaled $365.00. Neither the State nor the appellant provides any authority for the trial judge assessing or not being authorized to assess such costs. However, we are concerned about the imposition of such costs on the parents in this case. Given the circumstances of the case, such costs may not be imposed.

Third, the appellant argues that the trial court improperly prohibited the appellant and his parents from receiving a copy of the pre-diagnostic investigation and the psychological evaluation. *W.Va.Code*, 49–5–13(a) [1988], in relevant part, specifically states that "[t]he court ... may order a psychological examination of the child [and] ... *[u]nless waived, copies of the report shall be provided to ... counsel for the child* [.]" While the above code section does provide that a copy of the report is to be provided to the juvenile's attorney, it does not require that the child or his parents should receive their own copy of the report.[9] Moreover, the State asserts that the trial judge in the case before us clearly indicated in a letter dated January 11, 1994, that the appellant's counsel was given an opportunity to review the pre-diagnostic investigation and the psychological evaluation report. No prejudice has been shown. Thus, we decline to reverse on this ground.

Fourth, the appellant maintains the trial judge erred in his interpretation of *Trial Court Rules for Trial Courts of Record* Rule XVII(a) which states, in relevant part, that if a motion for disqualification of a judge is filed "at least 7 days in advance of any date set for a non-trial proceeding in the case," and if the judge does not agree to recuse himself, then the judge must proceed no

---

**8.** Originally, counsel was appointed to represent the appellant because his father was out of work when the criminal charges arose. After the trial was over, Robert Cohen replaced appellant's appointed trial counsel.

**9.** *W.Va.R.Crim.P.* 32 provides that a defendant may review a presentence report with his attorney, but that a court may determine that there are portions a defendant should not see and order a summary to be made of this report. The rule does not require the trial judge to provide a defendant with a copy. Therefore, in an adult criminal proceeding, unlike a juvenile delinquency proceeding, the trial judge has the discretion to give the defendant's attorney an actual copy of the presentence report. *See State v. Godfrey*, 170 W.Va. 25, 28, 289 S.E.2d 660, 664 (1981) (Since a defendant in a criminal case does not have a due process right to full disclosure of a presentence report, the trial judge may, in his discretion, reveal only parts of the report to a defendant or his attorney).

further in the matter and must transmit a copy of the motion to the Chief Justice of the Supreme Court of West Virginia along with his response.

 In the case before us, the appellant filed a motion to disqualify the trial judge on February 18, 1994. On February 25, 1994, a dispositional hearing was scheduled. The appellant argues that he met the seven-day requirement. The trial judge found that the appellant did not. However, the trial judge did inform the appellant that he would provide him with an opportunity to provide a memorandum on the issue of whether the motion should be transmitted to the Chief Justice. The appellant declined the offer and chose to proceed with the hearing. The appellant, thus, waived any error on this issue. As this Court held in syllabus point 3 of *In the Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981): "'An order to which no objection was made and which was actually approved by counsel, will not be reviewed on appeal.' Syl. pt. 1, *Loar v. Massey*, 164 W.Va. 155, 261 S.E.2d 83 (1979)." *Cf. Pardee v. Johnston*, 70 W.Va. 347, 74 S.E. 721 (1912) (If improper testimony is given to a jury over objection, and if the trial judge offers to strike such testimony, but the party objecting declines to have the trial judge strike the objectionable testimony, then the objecting party may not complain about the objectionable testimony on appeal.)

### V.

 Although the appellant fails to raise any errors which warrant reversal of appel-

lant's sentence, we nevertheless question the prosecutor's wisdom of so actively pursuing a delinquency proceeding against this particular appellant based upon the facts in this case. Further, we again stress that the trial judge in this case appeared to have shed the mantle of neutrality. When that occurs, the trial judge risks taking on the role of an advocate. We caution those involved in juvenile proceedings not to lose focus of the purpose behind the juvenile justice system:

> The purpose of this chapter is to provide a comprehensive system of child welfare throughout the State which will assure to each child such care and guidance, preferably in his or her home, and will serve the spiritual, emotional, mental and physical welfare of the child; preserve and strengthen the child's family ties whenever possible with recognition of the fundamental rights of parenthood and with recognition of the State's responsibility to assist the family in providing necessary education and training and to reduce the rate of juvenile delinquency and to provide a system for the rehabilitation or detention of juvenile delinquents and the protection of the welfare of the general public.

*W.Va.Code*, 49–1–1(a) [1981], in relevant part. Indeed, the purpose of the juvenile justice system is to "rehabilitate children, not to punish them." *State ex rel. Harris v. Calendine*, 160 W.Va. 172, 183, 233 S.E.2d 318, 325 (1977) (citations omitted).[10]

---

10. We are concerned about whether the appellant had effective assistance of counsel during the delinquency hearing. So far as we may determine, the trial attorney raised no objections. However, since this issue was not addressed by the parties, we do not have a record which adequately explores the effective assistance of counsel issue. We recognize that the appellant in the case before us will be unable to petition for a writ of habeas corpus since he is not currently incarcerated. *See W.Va.Code*, 53–4A–1 [1967]. However, a writ of error known as *coram nobis* has been used to address post-conviction issues when the defendant is not incarcerated. *See generally* 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* II–508 to 509 (2d 1993).

We acknowledge that the *West Virginia Rules of Civil Procedure* 60(b) has abolished the writ of *coram nobis* in civil cases. *See Isenhart v. Vasi-*

*liou*, 187 W.Va. 357, 360 n. 8, 419 S.E.2d 297, 300 n. 8 (1992) ("[A] writ *coram nobis* cannot be used to attack any civil proceeding."). However, in spite of the language in Rule 60(b) which abolishes the writ of *coram nobis*, in criminal cases "the writ of *coram nobis* ... remains available whenever resort to a more usual remedy would be inappropriate." *James v. United States*, 459 U.S. 1044, 1046–47, 103 S.Ct. 465, 466–67, 74 L.Ed.2d 615, 616 (1982) (footnote and citation omitted) (an opinion denying the petition for writ of certiorari). *See also Miller v. Boles*, 248 F.Supp. 49, 58 n. 46 (N.D.W.Va.1965), *overruled on other grounds, Sheftic v. Boles*, 377 F.2d 423 (4th Cir.1967) (Although the *W.Va.R.Civ.P.* 60(b) abolished the use of writs *coram nobis* in civil proceedings, "the abolition of these writs in civil cases probably does not apply to their use in criminal cases.")

Accordingly, since there is no reversible error, except insofar as we hold that the costs for the diagnostic and psychological evaluation shall not be imposed upon the appellant or his parents, we affirm the March 15, 1994 order of the Circuit Court of Marion County.

Affirmed, in part; reversed, in part.

BROTHERTON, J., did not participate.

CLECKLEY and FOX, JJ., deeming themselves disqualified, did not participate.

RANSON and STEPHENS, JJ., sitting by temporary assignment.

NEELY, Retired J., participated in the consideration and decision of this case.

Moreover, we point out that pursuant to *W.Va. Code,* 49–5–17 [1978] the records of appellant's juvenile proceeding "shall be expunged by operation of law" one year after the appellant's eighteenth birthday.